UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-302-RJC

| | |
|---|---|
| RHONDA PULIS, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), Plaintiff's Memorandum in Support, (Doc. No. 10), Defendant's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Memorandum in Support, (Doc. No. 12).

I. BACKGROUND

    A.    Procedural Background

Plaintiff Rhonda Pulis ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On June 9, 2016, Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") under Section 205(g) of the Social Security Act (the "SSA"), as amended, 42 U.S.C. § 405(g). (Doc. No. 6-1, "Transcript" or "Tr.," at 73, 140). Plaintiff alleged an inability to work starting on April 12, 2016, due to back disorders (discogenic and degenerative), as well as migraines. (Id.). The Administrative Law Judge ("ALJ") denied Plaintiff's application on October 22,

2018. (Tr. at 32.) This decision became the final decision of the Commissioner.

Plaintiff's Complaint, seeking judicial review and a remand of her case, was filed in this Court on October 23, 2019. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Plaintiff's Memorandum in Support, (Doc. No. 10), were filed March 6, 2020. Defendant's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Memorandum in Support, (Doc. No. 12), were filed on April 30, 2020. The pending motions are ripe for disposition.

B.  Factual Background

The question before the ALJ was whether Plaintiff was disabled under 216(i) and 223(d) of the SSA. (Tr. at 24.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on April 12, 2016 due to physical impairments. (Tr. At 73, 140).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Id. at 32.) In reaching this conclusion, the AC used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

> [The AC] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe

---

1 Under the SSA, 42 U.S.C. § 301 et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fourth step that Plaintiff was not disabled and was able to resume her past work as a cashier/checker. (Tr. at 27–32). In reaching this decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that Plaintiff suffered from severe physical impairments,[2] and that Plaintiff's impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. at 262–27). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except that Plaintiff can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, can

---

2 The severe impairments from which the AC determined Plaintiff suffered were: history of neurofibromatosis, lumbar degenerative disc disease with mild radiculopathy, and syncope. (Tr. at 26).

occasionally balance, stoop, kneel, crouch, and crawl, and that Plaintiff should avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. (Id. at 27–31).

Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could perform her past work as a cashier/checker. (Tr. at 32). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"), who testified that an individual matching Plaintiff's description could work as a cashier/checker. (Id.). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working in her prior position; consequently, Plaintiff's application for Title XVI benefits was denied. (Id.). The Appeals Council ("AC") denied her appeal upon review on August 22, 2019. (Tr. at 3).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d

4

773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Although Plaintiff's application was denied at Step Four, Plaintiff first challenges the decision at Step Three. Plaintiff alleges that the ALJ erred by (1) failing to discuss Plaintiff's low body mass index ("BMI") and chronic nausea against the criteria of Listing 5.08, (2) failing to evaluate Plaintiff's ability to stand and walk when considering her RFC, (3) failing to evaluate the medical opinion of treating

5

physician Dr. Andrew J. Morris ("Dr. Morris") that Plaintiff required the assistance of a walker, and (4) failed to evaluate and assign weight to the North Carolina Department of Motor Vehicles' ("DMV") assessment that Plaintiff met the requirements of a handicapped placard. (Doc. No. 10 at 1–2). Plaintiff requests remand for further evaluation. (Id.).

1. Whether the ALJ Erred by Not Evaluating Listing 5.08.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider the criteria of Listing 5.08 with a comparison of those criteria to the medical findings in the record. (Doc. No. 10 at 4). Plaintiff argues that an ALJ's decision must include a discussion of the relevant listing criteria and the record evidence; without comparing the criteria of the listing to the specific facts of the case, an ALJ's Step Three analysis is insufficient. (Doc. No. 10 at 5, citing Radford, 734 F.3d at 295). Plaintiff further argues that Listing 5.08 is applicable here because Plaintiff had chronic fatigue, nausea, and insomnia, along with a BMI varying between 15.51 and 6.24. (Doc. No. 10 at 5, citing Tr. at 233, 255, 264). Plaintiff states that these facts and others in the medical record showed that Plaintiff qualified for this listing. (Doc. No. 10 at 5–6, citing Tr. at 233, 257, 264, 265, 276, 278, 334, 413, 478, 483, 485, 494–496, 509, 511).

The government argues in response that the ALJ correctly considered only the listings applicable to Plaintiff's case. (Doc. No. 12 at 5–7). The government contends that Plaintiff presented no evidence that she had experienced weight loss, or if she did, that it was related to a digestive disorder, or that it occurred despite continuing treatment. (Id.). The government argues that the State agency medical consultant

6

noted no digestive disorders and concluded that no listing was met or equaled, and that Plaintiff herself testified to no digestive disorders, and that the ALJ's decision was consistent with this evidence. (Id. citing Tr. at 40–57, 78). Furthermore, the government argues that Plaintiff's BMI evidence does not show weight loss in particular. (Doc. No. 12 at 6). Plaintiff replies that the government's argument post-hoc rationalizes the ALJ's decision which itself was unsupported in this area, and that the record does show evidence of digestive disorders as well as evidence that attempts at weight gain failed as a result. (Doc. No. 13 at 1–3).

"The Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability." Radford, 734 F.3d at 291 (quotation marks omitted). "Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing." Gore v. Berryhill, No. 7:15-cv-00231, 2017 U.S. Dist. LEXIS 34557, at *18 (E.D.N.C. Feb. 23, 2017), adopted by 2017 U.S. Dist. LEXIS 34283 (E.D.N.C. Mar. 10, 2017). "[T]o determine whether a claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare the listing criteria with the evidence of the claimant's symptoms." Coaxum v. Berryhill, No. 8:16-cv-01099, 2017 U.S. Dist. LEXIS 88134, at *37 (D.S.C. May 25, 2017). "Where there is ample evidence that a claimant's impairment meets or equals one of the listed impairments, an ALJ has a duty of identification of relevant listed impairments and comparison of symptoms to listing criteria." Flesher v. Colvin, No. 2:14-cv-30661, 2016 U.S. Dist. LEXIS 43085, at *10 (S.D. W. Va. Mar. 31, 2016) (quotation marks omitted), aff'd, 2017 U.S. App.

7

LEXIS 18108 (4th Cir. Sept. 19, 2017).  Without a discussion of the relevant listings and a comparison of the claimant's symptoms to the listing criteria, it is impossible for the Court to determine whether substantial evidence supports the ALJ's conclusion.  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

Listing 5.08 requires "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08.  The regulations specifically list "gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition" as disorders of the digestive system. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.00(A). However, the regulations also acknowledge that "other digestive disorders ... may result in significant weight loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.00(G)(1).  The ALJ did not consider or discuss this Listing, and as such did not find that Plaintiff met its requirements.

Plaintiff was measured as having a BMI of 16.24 on April 19, 2016, and a BMI of 15.66 on December 15, 2017, well over six months apart.  (Tr. at 255, 495).  The record also indicates a history of Plaintiff experiencing nausea, vomiting, and stomach pain, including being "nauseated all the time for years" and having "chronic nausea," and that weight gain was poor, although at least one observation noted the nausea had "no relationship to eating."  (E.g. Tr. at 264, 276, 413, 478).  Notes from one medical visit stated that Plaintiff had "[p]atrial bowel resection due to intussusception," but this appears to have been from prior to the onset period.  (Doc. No. 494).

8

Although Plaintiff has shown evidence that her BMI was measured below the amount required for Listing 5.08 at intervals of over six months, Plaintiff has not presented sufficient evidence that there was weight loss that occurred on account of any particular digestive disorder, or that it occurred despite treatment having been prescribed, both of which are required for Listing 5.08 to apply. While Plaintiff did say that she has suffered repeated nausea and vomiting, at least one medical professional noted that these issues were not related to eating; furthermore, Plaintiff carries the burden to show that the Listing applies here, and she has not shown any underlying digestive diagnosis, or any digestive issues in particular after the onset period beyond potentially-unrelated nausea and vomiting, and Plaintiff has presented no evidence that any such digestive issues persisted and caused weight loss despite treatment.[3] Plaintiff has failed to show "ample evidence" that the factors in Listing 5.08 are met here. Cook v. Heckler, 783 F.2d at 1172. "Given the lack of evidence in the record and Plaintiff's counsel's failure to even raise the issue, the Court finds no error in the ALJ's decision not to specifically address whether Plaintiff met Listing 5.08." Knox v. Berryhill, 2019 WL 851425, at *4 (M.D. Fla. Feb. 22, 2019). The Court will overrule Plaintiff's first objection.

---

[3] The Court notes, too, that Plaintiff does not appear to have raised issues related to Listing 5.08 before the ALJ or at any other point prior to appeal to this Court. See Aytch v. Astrue, 686 F.Supp.2d. 590, 599 (E.D.N.C.2010) ("[W]hen an applicant for social security benefits is represented by counsel, the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits." (quotations omitted)).

9

2. **Whether the ALJ failed to adequately consider the effects of Plaintiff's pain, balance difficulties, and syncope when assessing the RFC for standing and walking.**

Plaintiff argues that she testified that she could not stand for more than 10-15 minutes at a time and could only walk a block even on a good day, but that the ALJ assigned Plaintiff an RFC that required up to six hours of standing and walking. (Doc. No. 10 at 6–7). Plaintiff argues that the ALJ failed to evaluate Plaintiff's pain, balance issues, and syncope in making this assessment, failing further to explain how the evidence of her nerve root compromise meant that her testimony was not supported by the record. (Doc. No. 10 at 7). Plaintiff contends that the record contains ample evidence of pain, balance, and syncopal issues. (Doc. No. 10 at 8–9, citing Tr. at 265, 266, 270, 276, 334–336, 395, 398, 420, 429, 439, 440, 456–467, 483, 484, 499–502, 506, 509–513, 575).

The government replies that the ALJ explained the finding that Plaintiff could perform the standing and walking requirements of light work in light of examining of the record as a whole, citing specific instances. (Doc. No. 12 at 7–8). These instances include imaging evidence that Plaintiff's disc disease was mild. (Id. citing Tr. at 28 (in turn citing Tr. at 400–401, 420–421, 428–429). The government argues that the ALJ looked at doctors' evaluations of these images and noted that Plaintiff retained normal muscle function and strength and treated her conservatively. (Doc. No. 12 at 8–9, citing Tr. at 28–29 (in turn citing Tr. at 393–400, 438–440)). Furthermore, the government argues, the ALJ explained with regard to syncope that the physical findings were generally normal and that Plaintiff had normal strength,

10

gait, sensation, and reflexes.  (Doc. No. 12 at 9, citing Tr. at 30 (citing in turn Tr. at 467–469, 575–578, 609–614)).

"[W]hen an ALJ says he has considered a matter, this court will take him at his word unless there is a reason based in the record to find otherwise." Dettmer v. Berryhill, No. CV 17-2296-JWL, 2018 WL 3304521, at *5 (D. Kan. July 5, 2018).  There is no such reason to believe otherwise here.  The ALJ stated that he found Plaintiff's testimony about her limitations inconsistent with the objective medical evidence, and cited to such evidence including imaging results, mild treatment of the related symptoms, and retained strength.  (Tr. at 28–29).  The ALJ is not required to agree with Plaintiff's assessment of her limitations; instead, he must consider her testimony as part of the body of evidence, but if he finds that objective medical evidence is inconsistent with Plaintiff's testimony, the ALJ may assess the RFC accordingly.  Massey v. Berryhill, No. 118CV00005RJCDSC, 2019 WL 1325928, at *3 (W.D.N.C. Mar. 25, 2019), aff'd sub nom. Dickens v. Durham Cty., 803 F. App'x 720 (4th Cir. 2020) ("Contrary to Plaintiff's assertions, the ALJ considered Plaintiff's subjective complaints regarding her alleged limitations with fingering and handling, but found that they were inconsistent with multiple, objective medical records showing that Plaintiff had full sensation and strength. Therefore, the Court determines that the ALJ properly considered Plaintiff's subjective allegations of symptom severity and limitations in light of all of the evidence before him in the record.").  The Court will overrule Plaintiff's second objection.

### 3. Whether the ALJ erred in his evaluation of the medical opinion evidence.

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence by (1) failing to evaluate Dr. Morris' December 2016 directive that Plaintiff use a walker, and (2), by summarily dismissing Dr. Morris' May 2018 letter in which he opined that Plaintiff would be unable to do significant work. (Doc. No. 10 at 9–11). Plaintiff argues that the ALJ mischaracterizes Dr. Morris' writings and failed to adequately explain why he dismissed Dr. Morris' medical opinions. (Doc. No. 10 at 12).

The government argues that Dr. Morris' reference to a walker was a one-off note rather than a medical opinion, and is outweighed by the lack of follow-up references to a walker as well as positive medical observations of Plaintiff's normal muscle tone and strength. (Doc. No. 12 at 11–12). As to Dr. Morris' May 2018 letter, the government argues that the ALJ specifically discussed Dr. Morris' letter in his opinion, finding that the opinion that Plaintiff cannot work touched on an issue reserved for the Commissioner, and that it was therefore not a medical opinion in the first place. (Doc. No. 12 at 12, citing Tr. at 31). The government further points out that the ALJ quoted Dr. Morris as saying he did not conduct disability exams, suggesting that Dr. Morris was not opining on the functional effects of Plaintiff's condition. (Id.). The government argues finally that the ALJ has the responsibility of weighing this evidence and resolving any conflicts in the record, which the ALJ did adequately and without contradictions here. (Doc. No. 12 at 12–13).

The regulations provide that more weight will generally be given to "medical opinions" from "treating sources." 20 C.F.R. § 404.1527(c)(2). "Medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, and what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Id. § 404.1527(a)(1). "Thus, while medical records constitute evidence that the ALJ must consider, medical records are not necessarily 'medical opinion' evidence as contemplated by the regulations. Only those statements within the records that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms, constitute medical opinions." Love-Moore v. Colvin, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013), report and recommendation adopted, No. 7:12-CV-104-D, 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013), aff'd sub nom. Moore v. Colvin, 584 F. App'x 155 (4th Cir. 2014) (citing McDonald v. Astrue, 492 F. App'x 875, 884 (10th Cir.2012) ("The treatment notes cited by [Plaintiff] do not qualify as medical opinions [because they] do not indicate any prognoses, nor do they provide opinions as to what McDonald could still do despite her impairments or the nature of her mental restrictions."); Norris v. Barnhart, 197 F. App'x 771, 774 n. 4 (10th Cir.2006) ("Contrary to the Commissioner's position, Dr. Hillis's records do contain "medical opinions" because he makes statements that reflect judgments about Norris's symptoms.")).

Here, the treatment notes that Plaintiff cites are not clear in meaning, both within the sentence itself and also in the greater context. The phrase to which Plaintiff cites in the treatment notes simply reads:

> Problem #1: Syncope and collapse (ICD-780.2) (ICD10-R55)
> No hypoglycemia
> No orthostasis
> No Meniere's
> Negative EEG
> MRI spine without explanation for syncope or disequilibrium
> Probably central related to NF-1
> Will discuss with neurology
> Use walker
> Apply for disability, I agree she cannot work in this condition.

(Tr. at 513). Plaintiff here points to the second to last phrase, "[u]se walker," as reflecting Dr. Morris' medical opinion that the Plaintiff required a walker, and that the ALJ failed to take this medical opinion into account. (Doc. No. 10 at 10–11).

However, it is not clear from the treatment notes that that the doctor was stating a medical opinion. The phrase might refer to a medical conclusion that the patient must use a walker; however, the phrase could just as easily have another meaning, such as noting that patient self-reports use of a walker. The fact that Dr. Morris nowhere else referred to the Plaintiff required use of a walker, including not referencing this idea in his letter arguing on behalf of Plaintiff's disability designation, (Tr. at 617), lends contextual credence to the argument that this treatment note was not an expression of a medical opinion. Further adding to this doubt to Plaintiff's interpretation is the fact that the note does not contain any detail or description. Plaintiff is correct that the ALJ did not discuss this phrase from the treatment notes; however, "an ALJ is not tasked with the impossible

14

burden of mentioning every piece of evidence that may be placed into the Administrative Record," Phillips v. Colvin, No. 3:13-CV-00307-MOC, 2014 WL 1713788, at *5 (W.D.N.C. Apr. 30, 2014), and if this brief note without explanation is not a medical opinion then it would be harmless error for the ALJ to neglect its mention. This Court upon review does not find that the phrase "[u]se walker," without explanation or elaboration, and without any further reference in the rest of the treatment notes, was not a medical opinion; therefore, the ALJ's failure to mention it is harmless.

Plaintiff also argues that the ALJ erred by summarily dismissing Dr. Morris' May 2018 letter in which Dr. Morris opined that Plaintiff is unable to do significant work. (Doc. No. 10 at 9–11). Plaintiff argues that ALJ's analysis too quickly rejects, and indeed outright ignores, Dr. Morris' analysis of Plaintiff's neurofibromatosis type 1, an abnormality affecting her brainstem, her syncopal episodes, her vertigo, and chronic nausea. (Tr. at 617). However, the ALJ specifically mentioned the 2018 letter in his determination, affording no weight to Dr. Morris opinion that Plaintiff is unable to work because that is a "determination reserved to the Commissioner," and disregarding Dr. Morris' conclusory statement about Plaintiff's disability because the ALJ found that it was not supported in the record. (Tr. at 31). The ALJ also noted that Dr. Morris admitted in the letter that he does not conduct disability exams. (Id.).

Dr. Morris' letter did not provide a function analysis and instead gave an opinion on the ultimate issue. The ALJ committed no error in determining that the statement of "a medical source that a claimant is 'disabled' is not a medical opinion

15

within the meaning of the Social Security regulations, but rather, a determination reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1)." Nations v. Colvin, No. 1:14-CV-00190-MOC, 2015 WL 1893655, at *13 (W.D.N.C. Apr. 27, 2015). As to whether the ALJ did not sufficiently explain the reasons for rejecting Dr. Morris' opinion, the ALJ stated that Dr. Morris' "conclusory statement regarding disability is not supported by the longitudinal evidence in the record." (Tr. at 31). Dr. Morris' letter does indeed list several diagnoses, but jumps immediately from the diagnoses to the conclusion that "she is unable to do significant work, with her current condition and would be a safety liability for an employer due to her syncopal episodes," stating that neurofibromatosis would likely result in further functional issues over time. (Tr. at 617). The ALJ did not err in describing the letter's reasoning as conclusory, as the letter simply states diagnoses and then concludes that Plaintiff is unable to do significant work based on these conditions without sufficient explanation. (Id.). The ALJ did not err by determining that Dr. Morris' letter opined on the ultimate issue left to the Commissioner, and that, other than attesting to diagnoses that the ALJ decided were not supported by the record, the letter's argument was conclusory. There is no reversable error as to the ALJ's determination on Dr. Morris' medical opinion, and the Court will overrule Plaintiff's third objection.

4. **Whether Defendant erred in its treatment of the North Carolina DMV determination.**

Fourth and finally, Plaintiff argues that Defendant should have given consideration to the decision of the North Carolina DMV as another governmental

entity. (Doc. No. 10 at 12–13, citing SSR 06-03p). The North Carolina DMV previously found that Plaintiff meets the requirements for a handicapped placard, with a standard Plaintiff argues is more restrictive than that of the SSA; Plaintiff argues that Defendant reversibly erred by only referring to this fact by stating that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (Tr. at 4). Plaintiff argues that the AC was required to explain its reasoning in determining why the record did not support the DMV's determination. (Doc. No. 10 at 13). Defendant replies that the AC clearly considered this evidence, that the DMV's determination is not binding on the SSA, that the DMV evidence itself contained no reasoning or background upon which to base a contrary conclusion, and that the AC not required to articulate its reasons for denying review. (Doc. No. 12 at 13–14).

Plaintiff simply submitted a photocopy of the handicapped placard and associated registration card to the AC, without any further explanation or basis for the designation. (Tr. at 37). "It is axiomatic that a finding of entitlement to a handicap placard is not equivalent to a finding of disability for the purposes of the Social Security Act." Delahoussaye v. Berryhill, No. 2:17-CV-2701-EFB, 2019 WL 1040875, at *4 (E.D. Cal. Mar. 5, 2019) (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)). This is all the more true where, as here, Plaintiff's lack of explanation or basis for the placard renders the submission valueless to the AC, as the relevant North Carolina statute provides several avenues by which to qualify for a handicapped placard, only some of which include the inability to walk for extended periods of time. NC Gen. Stat. § 20-37.5(2). "Thus, the information

17

supplied by Claimant on this issue wholly failed to provide any degree of insight into her mental and physical impairment(s) and failed to show the degree of disability determined by these agencies based on their rules." Cantere v. Colvin, No. 3:15-CV-12519, 2016 WL 6821143, at *18 (S.D.W. Va. Oct. 19, 2016), report and recommendation adopted, No. CV 3:15-12519, 2016 WL 6824397 (S.D.W. Va. Nov. 17, 2016) (internal citations and quotation marks omitted). The Court will overrule Plaintiff's fourth and final objection.

## IV. CONCLUSION

In sum, the Court finds that substantial evidence supports the ALJ's decision, and that the ALJ applied the correct legal standards.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**; and
3. The Clerk of Court is directed to close this case.

Signed: May 3, 2021

Robert J. Conrad, Jr.
United States District Judge

18